UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RESIDENTIAL FENCES CORP. and
LASER INDUSTRIES INC.

                          Plaintiffs,             14-CV-2552 (SIL)

RHINO BLADES INC., TOMER YUZARY,
and ANGELA YUZARY,                       **MEMORANDUM
                                                                                          AND ORDER**

                          Defendants.
-----------------------------------------------------------------X
**STEVEN I. LOCKE, United States Magistrate Judge:**

     Presently before the Court is Plaintiffs' Residential Fences Corp. and Laser Industries Inc. ("Plaintiffs") former attorney's James Moriarty, Esq. estate's (the "Estate") motion for attorney's fees. *See* DEs [138, 141, 142]. For the reasons set forth below, the motion is denied in its entirety.

     Before wading into merits of the motion, the Court notes as a preliminary matter, that the circumstances here present a cautionary tale for all counsel as to what can happen in the absence of a written retainer agreement. Further, this opinion does not evaluate Mr. Moriarty's abilities as a lawyer or qualities as a person. Rather, it concerns only the Estate's application for additional attorney's fees beyond what Mr. Moriarty was paid during the representation of Plaintiffs in this action and nothing more.

     **I.**     **Background**

     The following facts are limited to those necessary to resolve this motion. This litigation was commenced by Mr. Moriarty on Plaintiffs' behalf by Complaint filed on April 22, 2014, alleging claims against Defendants for fraud, conversion, theft and

1

unjust enrichment, and seeking an accounting. *See* DE [1]. The essence of the claims is that Plaintiffs are contractors and Defendants, Rhino Blades Inc., Tomer Yuzary and Angela Yuzary are a corporate vendor and the vendor's owners, who during the relevant time period were married, and who together sold Plaintiffs certain types of saw blades over several years. According to Plaintiffs, Defendants operated a scheme during which they overcharged Plaintiffs for the blades delivered, and they (Plaintiffs) now seek damages related to the overcharges. In order to resolve this litigation, a bench trial was held on May 22, May 23 and June 8, 2023 and post-trial briefing is being drafted for submission.

The issue presently before the Court, however, predates the trial. After numerous delays over the years, including those caused be the Covid 19 pandemic and Mr. Moriarty's health issues, this case was originally set for trial on April 4, 2022. *See* DE [104]. All sides appeared and Mr. Moriarty asked for a few minutes to consult with his clients before opening statements. Unfortunately, Mr. Moriarty passed away in Court at this moment. The Court then adjourned all proceedings and the trial was eventually conducted a year later. *See* Electronic order dated Apr. 4, 2022; DE [123].

It was during this intervening year that issues arose while incoming counsel was attempting to get the case file from the Estate. *See* DE [112]. Eventually, the Court learned that the Estate was refusing to turn over the file claiming that it was still owed attorney's fees and asserting a lien in this regard. *See* DEs [113, 116, 117]. The Court was unable to resolve the matter informally, and so an evidentiary hearing

was held on March 6 and April 24, 2023. *See* DEs [124, 128, 138-1, 138-2]. Post-hearing briefing followed. *See* DEs [138, 141, 142].

## II. Factual Findings

The following constitutes the Court's findings of fact concerning the Estate's application for attorney's fees. Mr. Moriarty represented Plaintiffs in this litigation since its inception until April 4, 2022, the date trial was originally set to commence. *See* Docket. There was no retainer agreement between Mr. Moriarty and Plaintiffs, Hearing Transcript ("Tr."), DE [138-1, 138-2] 7, *see* Tr. 47-48, 104-05, no evidence that an hourly rate was ever discussed,[1] and Mr. Moriarty never sent Plaintiffs any invoices. Tr. 60-61, 105, 109-110 ("I never had an agreement with him. He asked for money and I paid him"), 112 (Plaintiffs and Moriarty never spoke about attorney's fees or hourly rates), 194 ("Q Did Mr. Moriarty provide invoices to you? A Never"). The attorney-client relationship was "kind of relaxed,"—Mr. Moriarty would ask for a check and Plaintiffs would provide it in the requested amount. Tr. 105-06. In the end, Plaintiffs paid Mr. Moriarty whenever he asked to be paid until 2020, a total of $291,500 in attorney's fees, with the last check dated November 17, 2020. Tr. 64, 105-07, & Ex. B. In fact, the only time Plaintiffs ever complained about the fees was in relation to the last check, when Mr. Moriarty asked for $15,000, and Plaintiffs agreed to pay him $6,500. Tr. 106-08, 121-22. This was the only discussion between Plaintiffs and Mr. Moriarty about attorney's fees. Tr. 121-22.

---

[1] Although the Estate's counsel referred to an hourly rate of $450 found in an unidentified ledger, Tr. 9, this ledger was never introduced into evidence. Further, although Mr. Moriarty's widow testified to this hourly rate, the answer was stricken because it was based on hearsay. *See* Tr. 26.

The Estate asserts that the fees previously paid included work on matters unrelated to this case. *See* DE [138] at 3-6. The Estate's claim, however, was speculative, and Plaintiffs' bookkeeper, Seth Goldberg, and owner John Gulino, testified credibly and provided records refuting this assertion. *See* Tr. 61-68, 105 Exs. B-D.

Although, Mr. Moriarty's widow did not work with him, or sit with him while he worked, Tr. 45-47, she testified that Mr. Moriarty worked on this matter five hours a day, three or four days a week, and longer for the three months immediately prior to trial. Tr. 32-33, 36-37, 44 & Ex. 1-3. Although the Court believes that Mrs. Moriarty recalled events to her best recollection, the Court is skeptical as to the accuracy of her testimony. In the time it has taken to preside over this litigation, the Court has become familiar with the issues and underlying facts. It is not a complicated case, and no attorney could have reasonably worked so many hours on it.

There is, however, evidence that Mr. Moriarty did work on this case between his last fee payment on November 17, 2020, and the original day of trial, April 4, 2022. For example, Plaintiff's bookkeeper Seth Goldberg testified that to prepare for trial in early 2022, he attended between one and five meetings lasting between approximately one and three hours and participated on four or five phone calls of between five and 45 minutes each. Tr. 80-81, 84-86. There were also other trial prep meetings with some of Plaintiffs' owners. *See* Tr. 117, 120-21, 204. Further, on the day of trial, Mr. Moriarty brought several boxes and files to Court which demonstrate

4

that he did other work in preparation for trial. *See* Tr. 20-21. During 2021, prior to the trial prep, client meetings/phone calls were between once a month and once every three months. Tr. 82-83. There were also occasional court appearances during this time. Tr. 119.

In terms of work performed however, the Court notes that no depositions were conducted in this case, no dispositive motions were ever filed, and despite the need for certain documents to be obtained from third parties, no subpoenas were ever served, leaving incoming counsel to serve document subpoenas on the eve of trial. *See* Tr. 108, 141, 145-47, Docket. In order to correct for some of these failures, Mr. Moriarty served a voluminous notice to admit on Defendants after discovery had closed without moving for an extension of discovery deadlines, and the Court ultimately ruled that Defendants did not need to respond. Tr. 143-45, DE [44]. Moreover, the evidence demonstrates in terms of preparation, that Mr. Moriarty compiled certain spreadsheets to be offered into evidence, but they turned out to be inaccurate and had to be redone by incoming counsel. Tr. 142-43. In addition, the docket is replete with Mr. Moriarty missing deadlines and requesting extensions and adjournments. *See, e.g.,* DEs [24, 25, 35, 46, 47, 48, 50, 60, 62, 74, 102].

### III.   Conclusions of Law

Although the Estate's papers are unclear as to the exact amount sought, adding up the figures in its post-hearing submissions, it appears to seek an award of between $96,000 and $122,000 in attorney's fees for work performed between Plaintiffs' last payment on November 17, 2020 and April 4, 2022, the date Mr.

Moriarty appeared for trial. *See* DE [138] at 8-10 (totaling the computations provided). For the reasons set forth below, the application is denied in its entirety.

It is axiomatic that New York law, which applies to the fee dispute at issue here, requires that legal representation must be memorialized in writing. 12 N.Y.C.R.R. § 1215.1; *6340 NB LLC v. Capital One, N.A.*, 20-CV-2500 (JMA)(JMW), 2022 WL 17083292, at *4, n.4 (E.D.N.Y. Nov. 18, 2022) (recognizing applicability of New York law in federal court with respect to requirement that attorneys have written retainer agreements with clients). In the absence of a written agreement, an attorney may not seek fees asserting a breach of contract. *Mintz Fraade Law Firm, P.C. v. Brady*, 19-CV-10236 (JMF), 2022 WL 1125957, at *3 (S.D.N.Y. Apr. 15, 2022); *Sidoti v. Hall*, 124 A.D.3d 760, 761, 998 N.Y.S.2d 662, 662 (2d Dep't 2008). Instead the attorney may seek recovery in *quantum meruit*. *Mintz Fraade* at *3 (citing *Simon v. Sack*, 451 F. App'x 14, 17 (2d Cir. 2011) (summary order)); *District Attorney of New York v. Republic of the Philippines*, 14 Civ. 890 (KPF), 2021 WL 8531662, at *8 (S.D.N.Y. Oct. 10, 2021).

In order to establish a claim for *quantum merit* in the fee context, the attorney must show: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they were rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. *Fulbright & Jaworski, LLP v. Carucci*, 63 A.D.3d 487, 489, 881 N.Y.S.2d 56, 57 (1st Dep't 2009); *Flanagan Law, PLLC v. Perno*, Index No. 655160/2019, 70 Misc. 3d 1201(A), 135 N.Y.S.2d 630 at *2 (Sup. Ct. N.Y. Cnty. Dec. 18, 2020). In this context, the moving

6

party bears the burden of establishing that the alleged fee arrangement was "fair, fully understood, and agreed to." *District Attorney* at *8.; *Seth Rubenstein, P.C. v. Ganea*, 41 A.D.3d 54, 60, 833 N.Y.S.2d 566, 573 (2d Dep't 2007); *accord* N.Y. Rules of Prof. Cond. 1.5.  In determining a fee in *quantum meruit* courts consider multiple factors:  the time and skill required to litigate the matter, the matter's complexity, the attorney's experience, ability and reputation, the benefit to the client, and fees charged for similar services.  *SBC 2010-1, LLC v. Smits Structure Corp.*, 167 A.D.3d 795, 795, 87 N.Y.S.3d 484, 484 (2d Dep't 2018); *DeGregorio v. Bender*, 52 A.D.3d 645, 646, 860 N.Y.S.3d 193, 193 (2d Dep't 2008).

Applying these standards, the Estate's motion fails in its entirety.  Mr. Moriarty was paid $291,500 for his services in this case—a straightforward commercial litigation.  He took no depositions, served no non-party subpoenas and there were no dispositive motions.  The only work done was limited document discovery, which this Court presided over, and the only evidence presented at the fee hearing was that these documents were summarized for use at trial, but had to be redone.

Awarding any more attorney's fees in this context would be patently unreasonable.  It did not take extensive time or an unusual amount of skill to litigate this case.  This matter is not unusually complex.  No evidence concerning Mr. Moriarty's reputation was submitted into evidence.  The services provided to the clients were not particularly beneficial in that no depositions were conducted, and no subpoenas were served, leaving incoming counsel scrambling to obtain evidence in

7

advance of trial. Finally, there was no evidence that other attorneys would have been paid nearly the amount Mr. Moriarty received for the limited amount of work he performed. In fact, it is the Court's opinion that had another attorney conducted depositions, filed dispositive motions and tried the case to a conclusion, the fees would still not have totaled $291,500.

Against these conclusions, the Court accepts that Mr. Moriarty did work on the case between the date of the last check he received, November 17, 2020, and the morning trial was originally set to commence, April 4, 2022. Nevertheless, because Plaintiffs have already paid Mr. Moriarty such a large sum for the work already performed, no more is due. Accordingly, the Estate's motion for attorney's fees is denied in its entirety.

## IV.   Conclusion

For the foregoing reasons, the Estate's motion for attorney's fees is denied.

**SO ORDERED.**

Dated:      Central Islip, New York
            August 22, 2023

                                        /s/ Steven I. Locke
                                        Steven I. Locke, USMJ